UNITED STATES *v.* INTER-MARITIME FORWARDING CO., INC. (No. 4759)[1]

United States Court of Customs and Patent Appeals, June 24, 1953

*Charles J. Wagner*, Acting Assistant Attorney General (*Joseph E. Weil* and *Mollie Strum*, special attorneys, of counsel), for the United States.
*Tompkins & Tompkins* (*Allerton DeC. Tompkins* of counsel) for appellee.
[Oral argument April 14, 1953, by Mr. Weil and Mr. Allerton DeC. Tompkins]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the United States Customs Court, First Division, rendered pursuant to its decision, C. D. 1456, holding merchandise invoiced by the importer, appellee, as "Rubber Advertising Mats" dutiable at the rate of 20 per centum ad valorem under the provisions of paragraph 1021 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. The merchandise was assessed for duty by the collector at 25 per centum ad valorem under the provisions of paragraph 1537 (b) of that act as "Manufactures of india rubber * * * not specially provided for."

The pertinent parts of the competing paragraphs involved here read as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of duty |
|---|---|---|
| 1021 | Common China, Japan, and India straw matting, and floor coverings made therefrom_____ | 1½c per sq. yd. |
| 1021 | Carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, or jute, or a mixture thereof_____ | 17½% ad val. |
| 1021 | All other floor coverings not specially provided for: | |
| | Felt-base_____ | 12½% ad val. |
| | Other_____ | 20% ad val. |

Par. 1537.

(b) Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for, 25 per centum ad valorem; * * *

The merchandise at bar consists of rubber advertising mats approximately 30 inches long by 20 inches wide. The mat is of a green color with words comprised of relatively large white letters inlaid therein which read "WE GIVE S. & H. GREEN STAMPS." It is conceded that the mats are a manufacture of india rubber.

Appellee introduced in evidence the testimony of one witness, the owner and manager of the Point-O-Sale Advertising Company, the firm handling the merchandise in question. The mat itself, Exhibit 1, reflects the accuracy of his description as follows:

* * * It is like I said before, to utilize the vast space on the average floor for advertising purposes. This rug is particularly designed with a non-skid feature and with other features which permits the mat to lie flatly to the floor with beveled edges which assure no opportunity of catching one's foot on it and also those safety features which prevent a customer or anyone stepping on it from sliding. It is non-skid from the top surface. It also serves as a distinct utilitarian piece in that it affords an opportunity for the cleaning of the soles of shoes and likewise protects the area in which the mat is placed and that is one of the features that has always been considered to be good where traffic is heaviest, such as in the front of the cash register or the area where sales are particularly heavy and that is actually one of the advantages that has helped its acceptance.

Appellant contends that the mats are excluded from classification under paragraph 1021, *supra*, by virtue of the doctrine of *ejusdem generis;* that Congress never intended merchandise of the instant kind to be classified under the provision for "all other floor coverings not specially provided for" and, therefore, is not within the letter and spirit of paragraph 1021; and that the merchandise is properly dutiable as classified.

It is contended by appellee here, as well as below, that the provision for floor coverings, being a use designation, takes precedence over the composition provision of the statute defining manufactures of india rubber.

In support of its contentions before the trial court that india rubber is not *ejusdem generis* to straw, flax, hemp, jute, or a mixture thereof, and that since mats or rugs of india rubber are not of the class or kind of those enumerated in paragraph 1021, the imported mats are not *ejusdem generis* therewith and, therefore, cannot be dutiable under said paragraph, the Government cited, among others, the cases of *Gimbel Bros. Inc.* v. *United States*, 22 C. C. P. A. (Customs) 146, T. D. 47111, and *United States* v. *J. L. Hudson Co.*, 23 C. C. P. A. (Customs) 313, T. D. 48177.

In the *Hudson* case, *supra*, this court held "Fur rugs—lined" to be in chief value of fur rather than as floor coverings, although the testimony showed that they were used principally on the floor.

It is our belief that the facts in the *Gimbel* case, *supra*, are far more pertinent to the facts here than those present in the *Hudson* case. In the *Gimbel* case it was held that sponge rubber bath mats in chief

value of india rubber and used as a bathing accessory on the floor and in the bath tub, were dutiable as "manufactures in chief value of india rubber, not specially provided for" rather than as "all other floor coverings not specially provided for."

In arriving at its decision there, the court used language which we believe to be particularly appropriate here. It said:

> It seems obvious that the use of the article here involved differs from the customary use of such articles as the paragraph specifically names, such as floor coverings, made from straw matting, and carpets, carpetings, etc., made wholly of cotton, flax, hemp, or jute, or a mixture thereof. * * *

> \*   \*   \*   \*   \*   \*   \*

> In view of the fact that the article differs so greatly in material, texture, and use from the articles admittedly involved in paragraph 1022 [Tariff Act of 1922],[1] and, in view of the statements of the stipulation, we feel constrained to differ with the trial court as to its proper classification.

> Tariff acts are, of course, made for the future, but when an article entirely new enters commerce after the passage of an act, we do not feel that it must necessarily be classified in a paragraph simply because, in a literal sense, it may be described therein. *Other considerations are proper.* This articles does not compete in any way with other articles provided for in schedule 10, or, to be more specific, in paragraph 1022. (Italics ours.)

Application of the above principles to the facts here convinces us that the involved mats cannot properly be classified within the provisions of paragraph 1021, *supra.*

That the mats are literally used on the floor is unquestioned but it should also be noted that the single witness testified as follows:

> * * * We make advertising mats to be used on the floor stressing the floor as the place to be used from the beginning in an effort to increase sales knowing at the time that the floor is one of the few remaining places in a retail store that is not already bid for by other manufacturers.

> \*   \*   \*   \*   \*   \*   \*

> * * * It is like I said before, to utilize the vast space on the average floor for advertising purposes. * * *

Further, the witness, in response to the following questions, made the following answers:

> Q. Does the structure of the article have any bearing on its character?
> A. Very much so in that it is made of a type of rubber in which the advertising copy which one sees from the top surface is inlaid, going all the way through. It also has a remarkable span of life without wearing off the copy. The copy of course stays there until the rug is worn through.
> Q. When you walk on that rug will the advertising disappear?
> A. No, it goes from front to back. That is an inlaid piece—inlaid may not be the word for it, but it is inserted in there and vulcanized into one piece.

> \*   \*   \*   \*   \*   \*   \*

> R.Q. According to your experience for what purpose is this rug used on the floor?

---

[1] Paragraph 1022 of the Tariff Act of 1922 is identical with the subsequently enacted paragraph 1021 of the act of 1930 except that the latter excluded carpets, etc., made of cotton.

A. It is used for two specific purposes; one, advertising—to advertise the company's name or product; secondly, as a floor covering over spots or locations where there is considerable traffic, more traffic than the average and where it will be seen by the greatest number of people.

Thus it is clearly evident that the principal use of the mats is not as floor coverings, as we construe the meaning of those words as used in paragraph 1021, *supra*. The obvious purpose for which they are designed and the use to which they are put is as an advertising medium rather than as a floor covering. Their use on the floor is wholly incidental to the primary use to which they are put. We are supported in that conclusion by the testimony of the witness that the words "WE GIVE S. & H. GREEN STAMPS" are so inlaid or vulcanized in the mat as to remain even long after some of the physical features of the mat, upon which appellant relies in support of its contention that the mats are floor coverings, have disappeared.

Further, as was stated in the *Gimbel* case, *supra*, this article is not of the same texture as those provided for in paragraph 1021, *supra*, nor can it be said to compete with those items. We are of the opinion that the mats correspond with the provisions of paragraph 1537 (b), and in view of our conclusion, we find it necessary to *reverse* the judgment of the Customs Court.